FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 FEB -6  PM 4: 05

LORETTA G. WHYTE
CLERK

☜AO 241
(Rev. 12/04)

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: Eastern District of Louisiana |
|---|---|

| Name (under which you were convicted): McKinley Phipps | Docket or Case No.: 06-0570 SECT. T MAG 6 |
|---|---|

| Place of Confinement : Winn Correctional Center 180 CCA Boulevard, Atlanta, Louisiana | Prisoner No.: 445656 |
|---|---|

| Petitioner (include the name under which you were convicted) McKinley Phipps | v. | Respondent (authorized person having custody of petitioner) Tim Wilkinson, Warden |
|---|---|---|

| The Attorney General of the State of Louisiana | | |

### PETITION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

    Twenty-Second Judicila District Court, Parish of St. Tammany

    (b) Criminal docket or case number (if you know):   316809 "E"

2.  (a) Date of the judgment of conviction (if you know):  9/21/2001

    (b) Date of sentencing:    12/12/2001

3.  Length of sentence:   30 years at hard labor

4.  In this case, were you convicted on more than one count or of more than one crime?    ☐ Yes   ☑ No

5.  Identify all crimes of which you were convicted and sentenced in this case:
    LA. R.S. 14:31, Second Degree Murder

6.  (a) What was your plea? (Check one)

    ☑ (1)   Not guilty          ☐ (3)   Nolo contendere (no contest)

    ☐ (2)   Guilty             ☐ (4)   Insanity plea

Fee  5.00 pd
✓ Process
X Dkto
 CtRmDep
 Doc. No.

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury   ☐ Judge only

7.   Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes   ☐ No

8.   Did you appeal from the judgment of conviction?

☑ Yes   ☐ No

9.   If you did appeal, answer the following:

(a) Name of court:   Louisiana First Circuit Court of Appeal

(b) Docket or case number (if you know):   2002-KA- 0890

(c) Result:   Affirmed

(d) Date of result (if you know):   12/12/2002

(e) Citation to the case (if you know):   837 So.2d 760

(f) Grounds raised:

1. Trial Court erred in permitting the prosecution to present evidence and argue that defendant had intimidated witnesses
2. Trial Court erred in permitting the State to introduce into evidence firearms, which were unrelated to the murder
3. Trial Court erred in permitting witnesses to testify to the hearsay of unnamed and unkown persons.
4. Trial Court erred in permitting the State to interject, during the trial, song lyrics which were unrelated to the murder.

(g) Did you seek further review by a higher state court?   ☑ Yes   ☐ No

If yes, answer the following:

(1) Name of court:   Louisiana State Supreme Court

(2) Docket or case number (if you know):   2003-K-0692

(3) Result:
Writ Application Denied

(4) Date of result (if you know):   12/12/2003

✎AO 241
(Rev. 12/04)

(5) Citation to the case (if you know):    860 So.2d 1148 (La. 2003)

(6) Grounds raised:
    1.  First Circuit erred in holding it permissible for the State to have witnesses testify to hearsay of unnamed and unknown alleged eyewitnesses to the crime.
    2.  The First Circuit erred in holding it permissible for the State to put on evidence of and to argue that the Defendant had intimidated witnesses when not a single witness testifed that the Defendant had ever made a threat of any kind.
    3. First Cirrcuit erred in holding it permissible for the State to introduce unrelated firearms.

(h) Did you file a petition for certiorari in the United States Supreme Court?    ☐ Yes    ☑ No

    If yes, answer the following:

    (1) Docket or case number (if you know):

    (2) Result:


    (3) Date of result (if you know):

    (4) Citation to the case (if you know):

10.    Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?    ☑ Yes    ☐ No

11.    If your answer to Question 10 was "Yes," give the following information:

    (a)    (1) Name of court:    Twenty-Second Judicial District court

            (2) Docket or case number (if you know):    316809 "E"

            (3) Date of filing (if you know):    12/2/2004

            (4) Nature of the proceeding:    Application for Post-Conviction Relief

            (5) Grounds raised:
                The exact same issues as set forth in the attached petition for Federal Habeas Corpus Review

            (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

            ☐ Yes    ☑ No

            (7) Result:    Denied

            (8) Date of result (if you know):

AO 241
(Rev. 12/04)

(b) If you filed any second petition, application, or motion, give the same information:

    (1) Name of court:    Louisiana First Circuit Court of Appeal

    (2) Docket or case number (if you know):    2005-KW-0341

    (3) Date of filing (if you know):    2/14/2005

    (4) Nature of the proceeding:    Writ of Review to the First Circuit Court of Appeal

    (5) Grounds raised:
        Same as set forth herein

    (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

    ☐   Yes    ☑ No

    (7) Result:    Denied

    (8) Date of result (if you know):    5/16/2005

(c) If you filed any third petition, application, or motion, give the same information:

    (1) Name of court:    Louisiana State Supreme Court

    (2) Docket or case number (if you know):    05 KP 1592

    (3) Date of filing (if you know):    5/15/2005

    (4) Nature of the proceeding:    Application for Writ of Review from the Court of Appeal

    (5) Grounds raised:
        Same as set forth herein.

AO 241
(Rev. 12/04)

Page 6

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes     ☑ No

(7) Result:   denied

(8) Date of result (if you know):

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application,

or motion?

(1) First petition:     ☑ Yes     ☐ No

(2) Second petition:   ☑ Yes     ☐ No

(3) Third petition:     ☐ Yes     ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

12.     For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:**
The First Circuit Court of Appeal and the District Court erred in denying Petitioner relief when it denied his right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The prosecution failed to give notice of its intent to introduce evidence of highly prejudicial and speculative other crimes evidence against the petitioner at trial.  The state elicited testimony tending to show that Petitioner committed additional crimes for which  he was not charged, includig conspiracy, witness intimidation, and the possession of unregistered firearms.

(b) If you did not exhaust your state remedies on Ground One, explain why:

AO 241
(Rev. 12/04)

(c)     **Direct Appeal of Ground One:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?   ☑ Yes   ☐ No

    (2) If you did not raise this issue in your direct appeal, explain why:


(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ☑ Yes   ☐ No

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition:    Application for Post-Conviction Relief

    Name and location of the court where the motion or petition was filed:
    Twenty-Second Judicial District Court for the Parish of St. Tammany, Covington, Louisiana

    Docket or case number (if you know):    316.809 "E"

    Date of the court's decision:    1/14/2005

    Result (attach a copy of the court's opinion or order, if available):
    Denied.  The court order is attached to the writ


    (3) Did you receive a hearing on your motion or petition?    ☐ Yes   ☑ No

    (4) Did you appeal from the denial of your motion or petition?    ☑ Yes   ☐ No

    (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☑ Yes   ☐ No

    (6) If your answer to Question (d)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:
    Louisiana First Circuit Court of Appeal, Baton Rouge, Louisiana

    Docket or case number (if you know):    2005 KW 0341

    Date of the court's decision:    5/16/2005

    Result (attach a copy of the court's opinion or order, if available):
    Denied.  The court order is attached to the writ.


    (7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground One:

The Peitioner applied to the Louisiana Supreme Court for a Writ of Review of the decision of the First Circuit Court of Appeal

**GROUND TWO:**

The First Circuit Court of Appeal and the District Court erred in denying Petitioner relief when it denied his right to a fair trial and his right to due process of law, under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The Trial Court permitted the introduction of hearsay evidence that alleged Petitioner was the shooter.

(b) If you did not exhaust your state remedies on Ground Two, explain why:

(c)    **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?        ☑ Yes        ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes        ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:        Application for Post-Conviction relief

Name and location of the court where the motion or petition was filed:

Twenty-Second Judicial District Court for the Parish of St. Tammany, Covington Louisiana

Docket or case number (if you know):        316.809 "E"

Date of the court's decision:        1/14/2005

Result (attach a copy of the court's opinion or order, if available):
Denied

(3) Did you receive a hearing on your motion or petition?     ☐ Yes   ☑ No

(4) Did you appeal from the denial of your motion or petition?     ☑ Yes   ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☑ Yes   ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:
Louisiana First Circuit Court of Appeal

Docket or case number (if you know):     2005 KW 0341

Date of the court's decision:     5/16/2005

Result (attach a copy of the court's opinion or order, if available):
Denied.  The Court order is attached to the writ.

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you :

have used to exhaust your state remedies on Ground Two
Peitioner applied to the Louisiana Supreme Court for a Writ of Review of the decision of the First Circuit
Court of Appeal.

**GROUND THREE:**
The First Circuit Court of Appeal and the District court erred in denying Petitioner relief when it denied his right
to a fair trial and due process of law under Fifth, Sixth and Fourteenth Amendments to the United States
Constitution.
(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The prosecution introduced highly prejudical and irrlelvent character evidence, including Petitioner's stage
name and song lyrics, to show conformity therewith.

(b) If you did not exhaust your state remedies on Ground Three, explain why?

(c)     **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☑ Yes     ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes     ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:     Application for Post-conviction Relief

Name and location of the court where the motion or petition was filed:
  Twenty-Second Judicial District court for the Parish of St. Tammany

Docket or case number (if you know):     316.809 "E"

Date of the court's decision:     1/14/2005

Result (attach a copy of the court's opinion or order, if available):
  Denied.

(3) Did you receive a hearing on your motion or petition?     ☐ Yes     ☑ No

(4) Did you appeal from the denial of your motion or petition?     ☑ Yes     ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?     ☑ Yes     ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:
  Louisiana First Circuit Court of Appeal

Docket or case number (if you know):     2005 KW 0341

Date of the court's decision:     5/16/2005

Result (attach a copy of the court's opinion or order, if available):
  Denied.

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)      **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Three:

Petitioner applied to the Louisiana Supreme Court for a Writ of Review of the decision of the First Circuit
Court of Appeal

**GROUND FOUR:**
The First Circuit Court of Appeal and the District Court erred in denying Peitioner relief when it denied his right
to due process under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The State committed prosecutorial misconduct by vouching for the credibility of a trial witness as well as
testifying to the guilt of Petitioner.

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c)      **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?            ☑ Yes      ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)      **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes      ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:      Application for Post-Conviction Relief

**Ground Five:**
The District Court erred in denying Petitioner relief in post-conviction when it denied his right to effective
assistance of counsel as provided by the Sixth and Fourteenth Amendments of the United States Constitution.

**(a) Supporting Facts:**

Trial counsel's numerous incidents of ineffectiveness, most notably the failure to take writs, failure to present a
defense, failure to object to prosecutorial misconduct, failure to ensure a complete record was made, and failure to
reurge objections led to a manifest absence of counsel.

**(b) Direct Appeal of Ground Five:**

(1) The issue was not raised on direct appeal

(2) The issue was not raised on appeal because the issue of ineffective assistance of counsel is best raised in post-
conviction proceedings.

**(C) Post-conviction Proceedings:**

(1) The issue was raised in an *Application for Post-Conviction Relief*

(2) Name and Location of Court: Twenty-Second Judicial District Court, Parish of St. Tammany,
Covington, Louisiana

   Docket Number: 316.809 "E"

   Date of Court's Decision:        1/15/2005

Result: Denied

(3) There was no hearing on the petition.
(4) The Denial was appealed.
(5) This issue was raised in the appeal.

Name and Location of court where appeal filed: Louisiana First Circuit Court of Appeal, Baton
Rouge, Louisiana

Docket or case number: 2005 KW 0341
Date of Court's Decision: 5/16/2005

Result: Denied. The court order is attached to the writ.

**Other Remedies**:  Petitioner applied  to the Louisiana Supreme Court for a Writ of Review of the decision of the
First Circuit Court of Appeal.

**Ground Six:**

The District Court erred in denying Petitioner relief in post-conviction when it denied his right to due process and a fair trial guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.
**(a) Supporting Facts:**

The Trial Court permitted the State to backstrike a juror that had already been sworn. Further, La. C.Cr.P. articles 790 and 795 are clearly in conflict with one another.

**(b) Direct Appeal of Ground Six:**

(1) The issue was not raised on direct appeal

(2) The issue was not raised on appeal because current counsel was not counsel at the time of the direct appeal.
**(C) Post-conviction Proceedings:**

(1) The issue was raised in an *Application for Post-conviction Relief*

(2) Name and Location of Court: Twenty-Second Judicial District Court, Parish of St. Tammany, Covington, Louisiana

Docket Number: 316.809 "E"

Date of Court's Decision:        1/15/2005

Result: Denied. The court order is attached to the writ.

(3) There was no hearing on the petition.
(4) The Denial was appealed.
(5) This issue was raised in the appeal.

Name and Location of court where appeal filed: Louisiana First Circuit Court of Appeal, Baton Rouge, Louisiana
Docket or case number: 2005 KW 0341
Date of Court's Decision: 5/16/2005

Result: Denied

**Other Remedies**: Petitioner applied to the Louisiana Supreme Court for a Writ of Review of the decision of the First Circuit Court of Appeal.

Name and location of the court where the motion or petition was filed:

Twenty-Second Judicial District Court for the Parish of St Tammany, Covnington, Louisiana

Docket or case number (if you know):    316.809 "E"

Date of the court's decision:    1/14/2005

Result (attach a copy of the court's opinion or order, if available):

Denied

(3) Did you receive a hearing on your motion or petition?          ☐ Yes    ☑ No

(4) Did you appeal from the denial of your motion or petition?     ☑ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☑ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Louisiana First Circuit Court of Appeal

Docket or case number (if you know):    2005 KW 0341

Date of the court's decision:    5/16/2006

Result (attach a copy of the court's opinion or order, if available):

Denied.

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Four:

Peitioner applied to the Louisiana Supreme Court for a Writ of Review of the decision of the First Circuit Court of Appeal

13.  Please answer these additional questions about the petition you are filing:

(a)  Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?   ☑ Yes   ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:

(b)  Is there any ground in this petition that has not been presented in some state or federal court?  If so, ground or grounds have not been presented, and state your reasons for not presenting them:

14.  Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?   ☐ Yes   ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy of any court opinion or order, if available.

15.  Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?   ☐ Yes   ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the raised.

16.    Give the name and address, if you know, of each attorney who represented you in the following stages of the

judgment you are challenging:

(a) At preliminary hearing:
   N/A

(b) At arraignment and plea:
   N/A

(c) At trial:
   Kevin Boshea, 4209 Canal Street, New Orleans, Louisiana 70119 and
   Jason Williams, 631 St. Charles Ave. New Orleans, Louisiana 70119

(d) At sentencing:
   Kevin Boshea (see above)

(e) On appeal:
   Louisiana Appellate Project, Frank Sloan, 948 Winona Drive, Mandeville, Louisiana 70471

(f) In any post-conviction proceeding:
   Laurie A. White and Associates, LLC, 633 Carondelet Street, New Orleans, Louisiana 70130

(g) On appeal from any ruling against you in a post-conviction proceeding:
   Same as above.

17.    Do you have any future sentence to serve after you complete the sentence for the judgment that you are

challenging?              ☐ Yes      ☑ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the

future?                   ☐ Yes      ☐ No

18.    TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain

the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

This petition is timely in accordance with 28 U.S.C. s. 2224(d)(1)(a) and 28 U.S.C s. 2244(d)(2).
Petitioner's direct review became final on the Louisiana Supreme Court's denial of his Writ of Review on
the direct appeal, dated December 12, 2003. Therefore, in accordance with U.S.C. s. 224(d)(1)(a),
December 12, 2003 is the date on which the time period began to run. The petitioner then timely
applied for Post-Conviction relief in state court on December 2, 2004, within one year of the finality

of the convcition.  Therefore, according to 28 U.S.C. s. 2244(d)(2), the time limitation was suspended from December 2, 2004 until the state post-conviction process terminated on                          , with a denial of the Writ of Review at the Louisiana Supreme Court.  On that date, the time limitation began to run again and this petition has been timely filed.

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C.   § 2244(d) provides in

part that:

   (1)     A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

      (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

      (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

      (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

      (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241
(Rev. 12/04)

Page 16

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:

or any other relief to which petitioner may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on _____ (month, date, year).

Executed (signed) on _____ (date).

_____
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

IN FORMA PAUPERIS DECLARATION

_____
[insert appropriate court]

* * * * *

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **McKINLEY PHIPPS** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **CASE NO.:** |
| | * | |
| **TIM WILKINSON, Warden** | * | **SECTION:** |
| **Winn Correctional Center** | | |
| | * | **JUDGE:** |

**FILED:** _____    _____
                                        **DEPUTY CLERK**

## MEMORANDUM IN SUPPORT OF
## PETITION FOR WRIT OF HABEAS CORPUS PURSUANT
## TO TITLE 28 U.S.C. SECTION 2254

**MAY IT PLEASE THE COURT:**

NOW INTO COURT, through undersigned counsel, comes Petitioner, McKinley Phipps,

inmate number 445656, Winn Correctional Center, 180 CCA Boulevard, Winfield, Louisiana, 71483

(mailing address: Highway 560, Gum Springs Road, P.O. Box 1260, Winfield, Louisiana, 71485-

1260), who respectfully submits this memorandum in support of his petition for writ of habeas

corpus, and requests that the law and argument contained herein be considered in this matter.:

### GROUNDS FOR RELIEF

This petition for writ of habeas corpus is filed pursuant to 28 U.S.C.A.§2254. Petitioner is

in the custody of respondent pursuant to a state court judgment of conviction that was obtained in

1

violation of the Constitution of the United States. In particular, Petitioner represents that:

I.   Petitioner's right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution was violated when the prosecution failed to give notice of its intent to introduce evidence of highly prejudicial and speculative other crimes evidence against Petitioner at trial. The state elicited testimony tending to show that Petitioner committed additional crimes for which he was not charged, including conspiracy, witness intimidation, and the possession of unregistered firearms, in violation of La. C.E. art. 404(b) and Federal Rule of Evidence 404(b).

II.  Petitioner was denied his right to a fair trial and his right to due process of law, under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when the Trial Court permitted the introduction of hearsay evidence that alleged Petitioner was the shooter.

III. Petitioner was denied his right to a fair trial and his right to due process of law, under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when the prosecution introduced highly prejudicial and irrelevant character evidence, including Petitioner's stage name and song lyrics to show conformity therewith.

IV.  Petitioner's right to due process under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution was violated when the State committed prosecutorial misconduct by vouching for the credibility of a trial witness as well as testifying to the guilt of Petitioner.

V.   Petitioner was denied his right to effective assistance of counsel as provided by the Sixth and Fourteenth Amendments of the United States Constitution in that trial counsel's numerous incidents of ineffectiveness, most notably the failure to take writs, failure to present a defense, failure to object to prosecutorial misconduct, failure to ensure a complete record was made, and failure to reurge objections led to a manifest absence of counsel.

VI.  Petitioner's right to due process and a fair trial guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution was violated when the Trial Court permitted the State to backstrike a juror that had already been sworn.

## WRIT GRANT STATEMENT

Petitioner's federal habeas should be granted pursuant to 28 U.S.C. §2254(d) for the following reasons: there has been a state court adjudication of all of the issues presented in this

petition; the issues in question involve federal law; the issues were adjudicated in formal state court proceedings; and the adjudication resulted in a decision that was contrary to clearly established federal law under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. As discussed below, this petition is timely filed within one (1) year of the date on which his conviction was final.

## STATEMENT OF THE CASE

On March 21, 2000, Petitioner was charged through Bill of Indictment with Second Degree Murder, in violation of La. R.S. 14:30.1; Petitioner pled Not Guilty on March 24, 2000. Following jury selection and trial from September 10-21, 2001, a twelve-person jury found Petitioner Guilty of Manslaughter, in violation of La. R.S. 14:31, on September 21, 2001. Thereafter, the court sentenced Petitioner, to thirty (30) years at hard labor.

Petitioner sought an appeal of his sentence and conviction to the Louisiana First Circuit Court of Appeal. On December 12, 2002, the Louisiana First Circuit affirmed Petitioner's conviction. *See* State v. Phipps, 837 So.2d 760 (La. App. 1 Cir. 2002). The Louisiana Supreme Court denied Petitioner's *Application for Writ of Certiorari and Review* on December 12, 2003. *See* State v. Phipps, 860 So.2d 1148, (La. 2003).

Petitioner's *Application for Post-Conviction Relief* was timely filed on November 29, 2004, within one year of his conviction being affirmed and final in order to preserve his federal habeas deadlines established by the Anti-Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2244. The Trial Court denied all claims on January 14, 2005 without hearing, and without providing Petitioner an opportunity to prove his claims or explain why they should not be considered repetitious. Petitioner subsequently applied for writ of review of the trial court's decision to the

3

First Circuit. On May 16, 2005, the First Circuit denied Petitioner's writ of review, with a dissent by Judge Guidry, who stated that the decision of the trial court should have been vacated on the basis that Petitioner was not afforded an evidentiary hearing concerning Petitioner's claim of ineffective assistance of counsel. On June 15, 2005, Petitioner timely filed a writ of review of the First Circuit's decision with the Louisiana Supreme Court. The Supreme Court denied the writ on January 27, 2006 and this petition is timely filed in accordance with the delays afforded by law.

## STATEMENT OF FACTS

Petitioner McKinley Phipps, Jr. is a musician who was under contract with the No Limit record label in 1997. On February 20, 2000, Petitioner performed a live concert at Club Mercedes in Slidell, Louisiana. Due to his stage name, "Mac the Camouflage Assassin", Petitioner and his entourage wore camouflage clothing, as they usually did when he performed. As a promotional act, Club Mercedes advertised that fans who attended the concert that night wearing camouflage clothing would receive a discounted admission price. As a result, many of the people in the small, crowded Club Mercedes were also dressed in camouflage.

Following Petitioner's performance, an altercation broke out among people in the club in the early morning hours of February 21, 2000. Desmond Cousin, who attended the concert, was knocked to the ground after being struck with an unidentified object by an unidentified person. According to the State, members of Petitioner's entourage began to kick Cousin after he fell to the ground. In an attempt to protect Cousin, Barron Victor, Jr. tried to break up the fight by standing over Cousin. At some point, the scuffle escalated, and Petitioner has been allegedly as firing a gun at close range, shooting Barron Victor, Jr. in the left shoulder. Chaos ensued as everyone rapidly left the club. Barron Victor, Jr. died shortly after the bullet perforated his lung, heart and liver. St.

4

Tammany Parish Sheriff Officers arrived within minutes, and apparently heard several unknown people fleeing Club Mercedes say that 'Mac' was the gunman.  Instead of stopping any of these alleged witnesses, the police officers continued inside the club to secure the scene.  Not one police officer spoke with these apparent witnesses who randomly exclaimed that 'Mac' had been the shooter; no names were recorded, nor were any statements taken.  These police officers were further permitted to testify to this uncorroborated hearsay at trial.

Barron Victor, Jr.'s cousin, Nathaniel Tillison, was in the vicinity of the altercation prior to the shooting, and, following four statements to police, identified Petitioner as the gunman.  Only one other witness, Yulon James, testified that she saw Phipps shoot Victor, stating that he was holding a gun with sparks coming out of it.  However, Yulon James did not actually see Petitioner shoot the victim; she only saw the gun and sparks.  Although three witnesses, Jamie Wilson, Lourdes Ricketts and James Barney, gave statements to police that they saw someone other than Petitioner shoot the victim, these witnesses were not called to present testimony at trial.  A fourth witness, Darryl Prater, gave a statement to police that Petitioner could not have shot Victor because he [Prater] was watching Petitioner as it happened and Petitioner was not the shooter.  Prater further indicated in a second statement to police that Thomas Williams was the shooter and intimated as much the night of the shooting.  After the St. Tammany Sheriff's Office secured an arrest warrant, Petitioner was arrested at his home in Baton Rouge, Louisiana a few hours after the shooting at Club Mercedes.

A few days after the shooting, Thomas Williams, who had attended the concert on February 20, 2000, told the investigating officers that he shot the victim in self-defense after he was attacked with a beer bottle.  The police disregarded Williams' statement because he was engaged to Petitioner's aunt, determining that his account of the shooting did not match other witness' accounts,

5

in spite of the fact that it was corroborated by the statements of Darryl Prater.

Voir dire began on September 10, 2001, and continued on September 12, 2001, breaking as a result of the terrorist attacks of September 11, 2001. Trial began on September 13, 2001, and a mistrial was granted during opening statements. The State immediately took a writ to the Louisiana First Circuit, who reversed the Trial Court's ruling. Trial began again on September 18, 2001, and continued until September 20, 2001. Following conclusion of trial by jury, Petitioner was convicted of the lesser verdict of manslaughter in violation of La. R.S. 14:31, and sentenced to thirty (30) years at hard labor.

## ASSIGNMENT OF ERROR I

**Petitioner's right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution was violated when the prosecution failed to give notice of its intent to introduce evidence of highly prejudicial and speculative other crimes evidence against Petitioner at trial. The state elicited testimony tending to show that Petitioner committed additional crimes for which he was not charged, including conspiracy, witness intimidation, and the possession of unregistered firearms, in violation of Federal Rules of Evidence 404(b).**

## LAW AND ARGUMENT

At Petitioner's trial, the State commented on several prior bad acts allegedly committed by Petitioner, arguing that a conspiracy existed to cover up the murder to which Petitioner was allegedly a participant. The State then argued that Petitioner attempted to intimidate an eyewitness who was testifying at trial. The State also introduced evidence of several other guns in the possession of Petitioner, all of which were excluded as the murder weapon. This testimony served only to inflame the jury and prejudice Petitioner. Moreover, this testimony was doubly improper in that the State failed to give the required notice imposed both by Fed. R. Evid. 404(b) and La. C.E. art. 404(b).

1.     **Conspiracy to Cover up Murder**

During closing statements, the State improperly alluded to the existence of a criminal conspiracy to cover up the murder. Petitioner was never charged with this crime, and no evidence was introduced by the State to prove any conspiracy existed.

PROSECUTOR DEARING:
> "What about Thomas Williams? Well, let's examine his account and see if it is believable. First of all, let's not forget the fact that his fiancee or wife, I have heard it described both ways, is an aunt of the defendant's. And second of all, he didn't come in and take a murder rap. He came in and claimed self-defense, which means that everybody walks."

Transcript of Proceedings taken before the Honorable William J. Burris, Judge Presiding, Division "E", Twenty-Second Judicial District Court, Vol. VI, September 18, 2001, pg. 67, lines 11-13 (hereinafter Trial Transcript). "They came up with a plan after McKinley Phipps is arrested for this murder." Id. at pg. 67, lines 11-13. The State accuses Petitioner of conspiracy again, saying "I guess only time will tell if the efforts of the defendant and his cohorts to conceal his murder have succeeded." Id. at pg. 126, lines 12-14. This specter of a conspiracy is raised a fourth time when the State argues in closing that "McKinley Phipps is not going to get away with murder here. Despite efforts on his part and other people's parts- -". Id. at pg. 126, lines 29-31. Although defense objected, these objections were consistently denied by the trial court, denying Petitioner his right to due process.

2.     **Witness Intimidation**[1]

During voir dire, the defense filed a Motion in Limine requesting that any and all references

---

[1] See also the discussion under Assignment of Error III, where the State introduces song lyrics for the purpose of explaining why witnesses do not testify at trial, and again blames this on unknown and unsubstantiated witness intimidation by the Petitioner and/or his cohorts.

to the issue of witness intimidation be barred. The Trial Court granted the motion as to voir dire. During opening statements, the State referred to these alleged acts of intimidation by Petitioner, arguing that "[t]hrough influence and intimidation he has sought to hide the fact that he has committed a murder". Trial Transcript, Vol. IV, September 13, 2001, pg. 13, lines 16-18. The State again references this topic, claiming that people "have seen this man's influence. They have seen his intimidation." Id. at pg. 14, lines 29-31. At this point in opening statements, the defense objected and moved for a mistrial. Following argument, the Trial Court granted the mistrial, finding that acts of intimidation were not admissible. Id. at pg. 23, line 24-pg. 24, line 5. The State immediately took a writ to the Louisiana First Circuit, which was granted, reversing the Trial Court's granting of a mistrial.

On September 18, 2001, the trial began anew, with the State arguing yet again in opening statements, "this man has used his image, his influence, and his intimidation to conceal his murder or to attempt to conceal his murder." Trial Transcript, Vol. VI, September 18, 2001, pg. 4, lines 11-14. The State again referenced this topic when it claimed "all of a sudden, these people [witnesses], a large number of them, became uncooperative when approached by police stating they were scared." Id. at pg. 9, lines 2-5.

The State further developed this prejudicial theme via direct examination. When examining Yulon James, a witness called by the State, the prosecutor went into a line of questioning dealing with collect phone calls Ms. James had allegedly received from Petitioner. Despite the fact that Ms. James never testified that she had spoken to Petitioner on the phone nor that he had made any threats to her, the Trial Court allowed this information to come in. (*See* Trial Transcript, Vol. VII, September 19, 2001, pg. 124, line 14-pg. 125, line 17.)

8

The State again referred to these phone calls in closing statements, claiming that Ms. James "gives that statement to the police again within hours of having witnessed these events and after doing so, she gets a collect call from the defendant." Trial Transcript, Vol. VIII, September 20, 2001, pg. 122, lines 18-21.

The State's intention was to frighten the jury into convicting Petitioner, not based on the evidence of the actual act, but based on Yulon James' apparent feelings of intimidation. This plan worked so well that several unnamed jury members asked the State to file a motion to seal all juror information, not ten days after the guilty verdict was returned.

**3.      Possession of Additional Firearms**

At a hearing on September 10, 2001 on the subject of the Motion in Limine filed by defense regarding the admission of additional guns in Petitioner's possession, the State admitted that all of these weapons had been tested and ruled out as the murder weapon.  Trial Transcript, Vol. I, September 10, 2001, pg. 5, lines 1-18. Trial counsel argued that to permit evidence of these weapons would unduly prejudice the jury.  According to the prosecutor, its purpose for introducing the guns was to show that if Petitioner possessed some guns that were not registered in his name, he must have possessed the murder weapon as well:

> PROSECUTOR:
> The next argument, once the jury learned from the State that it did take that step [analyzing the guns registered to Petitioner], could very well reach the conclusion that hey, if you located the two weapons that were registered to the defendant and they were excluded, then how can you convince us that he had a weapon that he used in this murder crime. And my response would be to that is that well, the other three weapons recovered from the defendant or his residence, there is no registration linking him to those guns, so it demonstrates that this individual at times has possession of guns that are not registered, and, therefore, I can argue the point that he could- -the logical conclusion he could also have another thirty-eight caliber weapon that he did not properly register and, therefore, we have no way of tracing

that weapon.

Trial Transcript, Vol. I, September 10, 2001, pg 6, line 23-pg. 7, line 7. This is clearly evidence of

other crimes–possession of unregistered firearms–and by the State's own admission, introduced

solely for the purpose of prejudicing Petitioner and proving guilt.

However, the Trial Court denied defense's Motion in Limine and permitted the State to

introduce evidence of other guns in Petitioner's possession. The State then used the evidence of

other guns to argue to the jury that if Petitioner possessed those guns, then he must possess the

murder weapon as well.

PROSECUTOR:

You will hear that the police did recover five weapons from the defendant's property, four of which came out of his house, one of which came out of his 1999 Yukon vehicle. The one that came out of the 1999 Yukon was a Mack 90 semiautomatic rifle, not the murder weapon. Out of the house came a nine millimeter handgun, two thirty-eight caliber handguns and another semiautomatic rifle. None of those are the murder weapon.

Trial Transcript, Vol. VI, September 18, 2001, pg. 12, line 32-pg. 13, line 9. The State

admitted that none of the weapons recovered were the murder weapon, yet insisted on introducing

them anyway. Clearly any reference was entirely irrelevant.

These other guns were mentioned numerous times throughout the trial, unduly prejudicing

the petitioner.[2] It should be noted that on several of those occasions, it was made clear that none of

the guns mentioned were in fact the murder weapon. See, e.g., Trial Transcript, Vol. VI, September

18, 2001, pg. 103. Therefore the mention of these additional guns could have no effect other than

---

[2] For additional examples, see Trial Transcript, Vol. VI, pgs. 48, 51, 52, 53, 54, 55, 56, 103; Vol VII, pgs. 15, 24, 45, 46, 58, 87, 88, 89, 90, 91, 92, 93, 94, 104, 105, 153, 154, 157, 158, 159, 160, 161; Vol. VIII, pgs. 65, 66, 89, 90, 119.

to scare the jury into believing that Petitioner was a violent person who used guns simply because he was in possession of them, and who must have possessed the murder weapon as he had other guns as well. This is analogous to arguing that because a person possesses a set of kitchen knives, he must be the one who stabbed his neighbor. This analogy fails, and serves only to prejudice the jury with prior bad acts that have not been charged or proven by the prosecution.

The incidents described by the State were not charged in the indictment and are thus speculative prior bad acts falling within the scope of Fed. R. Evid. 404 (b), and were submitted to prove the character of the Petitioner and that he acted in accordance therewith.

A review of the record indicates that the State did not give notice of its intent to introduce alleged prior bad acts because, the State argued, all evidence of other crimes sought to be introduced fell under the *res gestae* exception. The record is further devoid of any evidence that a Prieur hearing was conducted in Petitioner's matter. *See* State v. Prieur, 277 So.2d 126 (La. 1973) and La. C.Ev. art 404(B). The State claimed that because no 404(b) evidence was being introduced, no Prieur hearing was required. However, this is not the case, and the evidence introduced by the State was not *res gestae*.

Other crimes evidence is admissible when it is "related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. In such cases, the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial proving its immediate context of happenings near in time and place." State v. Brewington, 601 So.2d 656, 657 (La. 1992) (citations omitted). Neither of the crimes alluded to were integral parts of the criminal act of murder for which Petitioner was on trial. State v. Code provides that

11

"evidence of other crimes is inadmissible in the guilt phase of a criminal trial for several reasons. Admission of evidence that the defendant may have committed other crimes creates the risk the defendant will be convicted of the present offense simply because he is a "bad person."" 627 So.2d 1373, 1381 (La. 1993), cert. denied 511 U.S. 1100 (1994). This is precisely the prejudice that Petitioner faced at his trial.

Simply put, the rule articulated in 404(b)(1) prohibits the state from introducing evidence of other crimes, wrongs, or acts to show a probability that the accused committed the charged crime because he is a "bad" person who has a propensity for this type of offense. The United States Supreme Court has claimed, in regards to 'other crimes or acts evidence, that "Although propensity evidence is relevant, risk that jury will convict for crimes other than those charged or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment creates prejudicial effect that outweighs ordinary relevance." Old Chief v. U.S. 519 U.S. 172 (1997). Louisiana courts have also long recognized that evidence of previous criminal activity does indeed affect, reasonably or not, the opinions of the fact-finder sitting in judgment. See State v. Kennedy, 00-1554(La. 4/3/01), 2001 WL 316170 p. 3. See also State v. Prieur, 277 So.2d 126, 129 (La. 1973) ("The natural and inevitable tendency of the tribunal ... is to give excessive weight to the vicious record of crime and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge"). See also 1 Wigmore, Evidence Sec. 194 (2nd Ed. 1940). Thus, other crimes evidence is not generally admissible because it infringes upon an accused's presumption of innocence by creating the risk that an accused will be convicted because of his bad character, or other bad acts, regardless of his guilt of the particular crime for which he is charged. State v. Hamilton, 478

12

So.2d 123, 129 (La. 1985), *citing* State v. Hatcher, 372 So.2d 1024 (La. 1979).

This incident constitutes evidence of other crimes, and should have been properly noticed to the defense prior to trial and a hearing held.  In Petitioner's matter, the State sought to circumvent its notice obligation under 404 (B) by simply eliciting testimony at trial regarding prior bad acts and other crimes.  The State clearly committed a serious discovery violation by this intentional failure to give the defense proper pre-trial notice.  The prosecution must not merely provide notice of its intent to use other crimes evidence, it must prove that the defendant committed the similar acts.  "For other crimes evidence to be admissible, the state must prove by a preponderance of the evidence that the defendant committed the similar act." State v. Schleve, 775 So.2d 1187, (La.App. 1 Cir. 12/20/00), *writ denied* 803 So.2d 983, (La. 12/14/01), *writ denied* 804 So.2d 647, (La. 12/14/01), *rehearing denied, certiorari denied* 537 U.S. 854.  In Petitioner's matter, the prosecution sought to contravene this burden and avoided having to prove the alleged prior bad acts by consciously failing to give notice of its intent to introduce 404(b) evidence.

Here, Petitioner asserts that there was no supporting evidence presented to prove the prior bad acts levied against him, and hence the evidence is not "plain, clear and conclusive." U.S. v. Turquitt, 557 F.2d 464 (5th Cir. 1977), *See also* State v. Sutfield, 354 So.2d 1334 (La.1978.).[3] Moreover, the state falsely claimed there was no Prieur issue, so the Trial Court never considered

---

[3]

Sutfield further held: "...responsibility of trial court is greater than that of merely determining whether particular evidence of other crimes does or does not fit in one of approved classes; underlying policy of protecting accused against unfair prejudice demands that before evidence is admitted at all, court must determine that there is clear and convincing evidence of commission of other crime and of defendant's connection therewith and trial judge must balance all pertinent factors and exclude other crimes evidence, even if independently relevant, when its probative value is outweighed by its prejudicial effect." State v. Sutfield, 354 So.2d 1334, 1337 (La.1978.)

either the relevancy or veracity of the evidence.  As stated above, the State did not file any notice of

intent to use other crimes evidence pursuant to La. C. E. art. 404(b), and no pre-trial <u>Prieur</u> hearing

or determination of admissibility by the court was held.  Clearly, the incidents referenced above are

prior bad acts falling within the scope of Fed. R. Evid. 404(b) and La. C.E. art. 404(b).

## ASSIGNMENT OF ERROR II

**Petitioner was denied his right to a fair trial and his right to due process of law, under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when the Trial Court permitted the introduction of hearsay evidence that alleged Petitioner was the shooter.**

## LAW AND ARGUMENT

At several points throughout Petitioner's trial, police officers were allowed to testify, over

defense objection, that they heard several unknown people shout 'Mac did it', as they ran away from

Club Mercedes.  The State argued that these statements fell under the excited utterance exception

to hearsay under La. C. E. art. 803.  While questioning Officer Nelson, the State elicited the

following:

> MR. DEARING:
> Q.    As you were coming into contact with them, were they making any remarks concerning what had occurred inside the club?
> MR. BOSHEA:
> Your Honor, object on the grounds of this is hearsay.
> THE COURT:
> I am going to overrule.  Excited utterance.
> MR. DEARING:
> Thank you, Your Honor.
> THE WITNESS:
> Yes, they were saying the shooter is inside.  We asked who the shooter was and they would say Mac the Camouflage Assassin Rapper.

Trial Transcript, Vol. VI, September 18, 2001, pg. 132, lines 6-19.  Yet another

officer testified:

14

MR. DEARING:

Q.     Officer McCormick, what information did you hear concerning the identity of any participant?

A.     As people were fleeing, I could hear statements from people why did Mac do this.

Trial Transcript, Vol. VI, September 18, 2001, pg. 153, lines 19-22. That same officer again testified

moments later:

MR. DEARING:

Q.     Officer McCormick, would you like me to repeat my last question?

A.     Yes, please.

Q.     As you were rushing into this establishment and asking where is the shooter, where is the shooter, did you get a response from anybody?

A.     Yes, I did.

Q.     What was the nature of the response?

A.     There were several different responses. I believe one was he ran out the back door. It was - - it's Mac. They had one person I remember pointing to, they had a poster of some sorts, if I can remember correctly, on I think it was the front door of the building, someone pointing it is him.

Q.     Okay.

A.     And other persons saying Mac the assassin, Mac the Camouflage Assassin.

Trial Transcript, Vol. VI, September 18, 2001, pg. 155, line 26-pg. 156, line 10. However, no officer

stopped to speak with or get the name of any of these people.

The trial court also permitted this hearsay to be introduced through one of the State's alleged

eyewitnesses, Yulon James.

MR. DEARING:

Q.     Yulon, while you were assisting the victim in the manner that you described, did you hear any talk around you?

MR. WILLIAMS

Objection, Judge, calls for hearsay.

THE COURT:

I am going to overrule that, 803 subsection 2.

MR. DEARING:

Thank you, Your Honor.

Q.     If you could please go ahead and answer the question.

15

> A.    What did I hear around me?
> Q.    Correct.
> A.    From the time the shots went off, everybody started screaming Mac
>        shot him, Mac shot him.

Trial Transcript, Vol. VII, September 19, 2001, pg. 120, line 28- pg. 121, line 11.

The Prosecutor also used this hearsay testimony in closing statements to argue that Petitioner was in fact the shooter.

> And let's not forget the fact that in addition to those two people, we heard testimony
> from Officer Nelson, Officer McCormick, and Detective Franklin that when they
> arrived on the scene, the first two officers literally within minutes, four minutes of
> the call, Detective Franklin just a short time thereafter, they heard numerous people
> identifying this individual (Indicating) again as the perpetrator of this crime.

Trial Transcript, Vol. VIII, September 20, 2001, pg. 61, lines 19-28. The State again refers to these mystery witnesses, arguing, "[w]hat have they witnessed? They have witnessed this man (Indicating) put a bullet into somebody that was simply trying to act as a peacemaker". Trial Transcript, Vol. VIII, September 20, 2001, pg. 64, lines 19-22.

La. C.E. art. 801 defines hearsay as "a statement, other than the one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay evidence is generally inadmissible unless the evidence falls into the ambit of either nonhearsay as defined by La. C.E. art. 801 or a hearsay exception under La. C.E. art. 803. In Petitioner's matter, the State sought to introduce hearsay statements made by unidentified witnesses to police officers. Following defense objection, the Trial Court found them to be excited utterances admissible under La. C.E. art. 803(2). However, the declarants were not present at trial, but were not unavailable. Thus, there was no indicia of reliability, and the statements were indisputably hearsay not falling into either a hearsay exception or the category of nonhearsay. As such, these statements were clearly inadmissible.

16

On appeal, the First Circuit held that this evidence was probative of the fact that many people 'believed' Petitioner committed the crime. However, the belief of unnamed, unknown persons is completely irrelevant to a criminal trial and to the State's burden of proof. The purpose of the excited utterance as an exception to hearsay is that it is inherently reliable due to the startling event or condition, and made while the declarant was under the stress or excitement caused by the event or condition. In State v. Henderson, the Louisiana Supreme Court held that there "must be an occurrence or event sufficiently startling to render normal reflective thought process of *an observer* inoperative" (emphasis added). 362 So.2d 1358, 1362 (La. 1978).

Because none of the declarants from Club Mercedes were stopped and interviewed at the time, it is not clear that any of them actually witnessed the event. Thus, there are no observers. Moreover, of the several statements taken by investigating officers in the days following the crime, only six included identifications of who had actually committed the crime. Of those statements, only two people (Yulon James and Nathaniel Tillison), stated that Petitioner was in fact the shooter. Four of those statements were exculpatory to Petitioner. Those four people (Jamie Wilson, James Barney, Lourdes Ricketts, and Darryl Prater) clearly claimed that Petitioner could not have been the shooter because they were watching him when the incident occurred. That left only two witnesses who allegedly saw the shooting, clearly not the "several" or group of persons the police officers say Petitioner did it.

The Sixth Amendment to the United States Constitution and Article I, Section 16 of the Louisiana State Constitution provide that an accused in a criminal case is entitled to be confronted with the witnesses against him. In California v. Green, the United States Supreme Court held that:

Confrontation: (1) insures that the witness will give his statements under oath--thus

17

impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.

399 U.S. 149, 158 (1970).  <u>State v. Henderson</u> recognizes that requirements of the confrontation clause are "satisfied when the defendant is permitted to fully cross-examine the witness(es) to the out-of-court statement(s) at issue". 672 So.2d 1085, 1090 (La. App. 4 Cir. 1996).  As noted above, the purpose of the confrontation clause is to ensure the "trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement". <u>Id</u>. (Citations omitted).

Most recently, <u>Crawford v. Washington</u>, the United States Supreme Court held that "out-of-court statements by witnesses that are testimonial are barred, under the Confrontation Clause, unless witnesses are unavailable and defendants had prior opportunity to cross-examine witnesses, regardless of whether such statements are deemed reliable by court (ie. if they are 'firmly rooted' hearsay exceptions) abrogating <u>Ohio v. Roberts</u>, 448 U.S. 56, (1980)." 541 U.S. 36, (2004).  In this case, the statements that "Mac did it," were both highly prejudicial and testimonial.  Moreover, the declarants were unavailable to be cross-examined by petitioner- these witnesses did not testify at trial, and not identified or even present in any pre-trial or trial proceedings.  Under <u>Crawford</u>, it matters not whether the court finds these statements to have been trustworthy under the circumstances, even if the circumstance qualifies as an 'excited utterance.'  Therefore, admission of this hearsay evidence was illegal, and a blatant violation of <u>Crawford</u>.

As discussed above, this testimony that "Mac did it" was extremely important to the State, as the only evidence it had was from the alleged unknown eyewitnesses.  Moreover, the testimony was not cumulative, in that only two actual eyewitnesses were offered by the State.  Because it is not

known whether these anonymous witnesses actually saw the shooting, there could also be the additional problem of hearsay within hearsay. Even confidential informants must be tested for reliability. Here the State used unknown, unnamed, alleged eyewitnesses who may not have seen anything at all, were not interviewed by police but their alleged statements were used at trial against Petitioner. Most importantly, the defense did not have opportunity to cross-examine these witnesses. Thus, Courts have erred in allowing this hearsay testimony to be presented at trial, violating Petitioner's rights under the Confrontation Clause.

## ASSIGNMENT OF ERROR III

**Petitioner was denied his right to a fair trial and his right to due process of law, under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Federal Rule of Evidence 403 when the prosecution introduced highly prejudicial and irrelevant character evidence, including Petitioner's stage name and song lyrics to show conformity therewith.**

## LAW AND ARGUMENT

As described below, Petitioner's trial was characterized by grievous due process violations. Throughout the trial, the State was improperly allowed to admit highly prejudicial and irrelevant evidence of Petitioner's song lyrics and stage name, which was done to combat the dearth of any physical evidence which pointed to Petitioner as the shooter, and to excite and inflame the jury due to the ongoing events of September 11, 2001, which was in-progress. During opening and closing statements, and while questioning witnesses, the State repeatedly referred to Petitioner's musical alias--"Mac the Camouflage Assassin"--and to song lyrics written by Petitioner with the sole intention of convincing the jury that Petitioner acted in conformity with his stage persona. This is inadmissible character evidence, which was improperly admitted by the trial court.

19

**Petitioner's Song Lyrics**

The State's first words in opening statements were lyrics from one of Petitioner's songs.

"Murder murder, kill kill.  Pull the trigger, put a bullet in your head."  Trial Transcript, Vol. VI,

September 18, 2001, pg. 3, line 32-pg. 4, line 1.  The State also referenced lyrics when questioning

Petitioner's father about military influences in Petitioner's songs.

> REDIRECT EXAMINATION BY MR. DEARING:
> Q.  Mr. Phipps, if I understood you correctly during Mr. Williams'
>       questioning of you, you testified that your son's whole image is military
>       based.  Did I understand you correctly?
> A.  It's, you know, it's like military uniforms.  It's camouflage.  That's all.
> Q.  But that is the image that you have- -according to your testimony, that's
>       the image that he attempts to project, correct?
> A.  Yes.
> Q.  So if you F with me you get a bullet- -

Trial Transcript, Vol. VII, September 19, 2001, pg. 65, lines 9-19.

> EXAMINATION BY MR. DEARING:
> Q.  Mr. Phipps, is it that military image your son is seeking to advance and his
>       lyrics state you F with me and you get a bullet in your brain?

Trial Transcript, Vol. VII, September 19, 2001, pg. 67, lines 26-28.

In closing statements, the State again referenced this particular lyric, arguing that "I think

that you have gotten perhaps an inkling of what it must have been like to be the witness of this

murder, especially when you consider who the perpetrator is.  Somebody whose message is murder

murder, kill kill, you F with me you get a bullet in your brain."  Trial Transcript, Vol. VIII,

September 20, 2001, pg. 59, lines 25-31.[4]

Yet again in closing, the State alluded to witness intimidation through Petitioner's lyrics,

claiming that these witnesses had seen Petitioner commit murder, and was someone "[w]hose

---

[4]  This issue of witness intimidation is also raised in Assignment of Error No. I .

message is murder murder, kill kill, you F with me you get a bullet in your brain." Trial Transcript,

Vol. VIII, September 20, 2001, pg. 64, lines 29-30. A third time the State directly referred to witness

intimidation through Petitioner's lyrics, arguing:

> Mr. Williams accuses me of putting rap music on trial. It is important for you, in my
> opinion, to know the atmosphere in which this murder occurred. So that you will
> know why a murder that occurred in a nightclub, a crowded nightclub by most
> people's account, only two witnesses come and take this stand to tell you what they
> saw happen. Why only two people come take the stand, walk in this courtroom and
> face that man (Indicating) and tell you what they saw, when it was a structure
> crowded? That's where you need to know the context of this murder. The fact that
> this man (Indicating) who talks about- -says the lyrics over and over again you F with
> me, you're going to get a bullet in your head.

Trial Transcript, Vol. VIII, September 20, 2001, pg. 109, lines 11-25. The State drove this point

home, stating "we have a man who sings lyrics of that nature, kills another person with no motive,

no justifiable motive, do you think people are going to be lining up to volunteer to come to testify

against him under the circumstances?" Id. at pg. 110, lines 20-24.

**Petitioner's Stage Name**:

Petitioner's stage name was the subject of a September 12, 2001 Motion in Limine, filed by

trial counsel in response to the terrorist attacks on this country which occurred the day before on

September 11, 2001. Defense counsel argued that use of "Mac the Camouflage Assassin" would be

overly prejudicial, in no way probative, and fundamentally deny the defendant a fair trial. This

motion was denied by the Trial Court.

The State went on to mention Petitioner's stage name in opening statements, to show that

Petitioner must be guilty due to his choice of monikers.

> "This is the self-proclaimed Camouflaged Assassin. Camouflage means to conceal,
> to hide. Assassin is one who commits murder. You will see that this man has used
> his image, his influence, his intimidation to conceal his murder or to attempt to

21

conceal his murder."

Trial Transcript, Vol. VI, September 18, 2001, pg. 4, lines 8-14.  The State continued to reference Petitioner's stage name throughout the trial.[5]  Finally, the State closed with Petitioner's stage name, asking the jury to "remove the camouflage from this assassin and find him guilty".  Trial Transcript, Vol. VIII, September 20, 2001, pg. 70, lines 24-25.  The State's sole purpose behind the use of the stage name was to inflame the emotions of the jury, particularly in light of the atmosphere of terror engendered by the attacks which occurred in the days immediately preceding and during this trial.

Fed.R. Evid. 403 La. C.E. art. 403 provides: "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time."   Clearly, the song lyrics in this case unfairly prejudice and mislead the jury from concentrating on the evidence relevant to petitioner's charge.

In Petitioner's case, evidence of his stage name and song lyrics were introduced for no other purpose than to prove that he was a violent person who intimidated witnesses, and would not hesitate to kill someone who insulted him.  This "evidence" was not even relevant to the matter at hand..  However, the Trial Court erroneously determined that Petitioner's stage persona was relevant to the proceedings. The Trial Court then incorrectly determined that, under 403, this information was more probative than prejudicial.

As noted above, this trial began in the immediate events of the September 11, 2001 terrorist attacks on America.  Discussions of terrorists and assassins were rampant throughout the news

---

[5]

For other examples, see also Trial Transcript, Vol. VI, pg. 9, lines 13-19; pg. 14, lines 27-28; pg. 15, line32-pg. 16, line 1; pg. 41, lines 10-15; pg. 156, lines 9-10; pg. 184, line 18; pg. 243, lines 13-14.

media, making Petitioner's stage name an extremely prejudicial moniker at that time.   There is no doubt that his name unduly aroused the jury's emotions of prejudice and hostility, who were not sequestered during the trial, and in spite of the judge's instructions, could not have avoided the media blitz at that time.   Moreover, the probability that the evidence created a collateral issue which unduly distracted the jury from the main issue is apparent.

The issue as to whether or not a mistrial should be granted based upon a jury prejudiced by the events of 9/11, in a criminal case involving non-terrorism charges, has not been addressed by the United States Fifth Circuit Court of Appeal.   However, the United States Third Circuit Court of Appeal addressed the issue in U.S. v. Hakim, 344 F.3d 324 ( 3d Cir.  2003).   In that case, the defendant was charged with conspiracy to commit armed bank robbery, armed bank robbery and using and carrying and brandishing a firearm during and in relation to a crime of violence.  Id.  His trial followed shortly after the tragedy of September 11, 2001 and at trial, the government made reference, both during its questioning of witnesses and its closing arguments, to the following: (1) the fact that (the defendant) was Muslim; (2) his position as a Muslim spiritual leader; (3) his ability to speak Arabic; and (4) his travel to Saudi Arabia.  The defense counsel made no objection to the entry of this information on the record, and Hakim was convicted by the district court.  However, Hakim appealed the district court's decision on the ground the government made reference to his faith and his travels to Saudi Arabia to suggest that he had connections to terrorism; the government argued he made demonstrations of his faith to show that he as a holy man, and that the eyewitness in the case was aware of his status and therefore would not lie about the identification.  Id.

The Third Circuit Court of Appeal stated  that they were  "underwhelmed by the government's explanation," and that had the defense objected to the entry of the evidence, a mistrial

23

should have been granted. Id. at 326.

In petitioner's case, however, the defense counsel moved for mistrial numerous times based on the prosecution's entry into evidence of Petitioner's costume of camouflage and stage name of "assassin", implicitly referencing the events of 9/11 that were prevalent and very ripe in the juror's minds. Furthermore, the standard of review for this Court to grant habeas corpus based on this issue is much less strict than the plain error test that constrained the Third Circuit Court of Appeal in U.S. v. Hakim. The ruling standard set forth in 28 U.S.C. s. 2254(d) reads in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --... (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Therefore, the federal court may grant petitioner's *Application for Writ of Habeas Corpus* if it finds the state court's decision regarding the admission of Petitioner's stage name and costume in this case as unreasonable.

Rather than focusing on the circumstantial case presented by the prosecution which relied on two questionable eyewitnesses and no physical evidence, the jury was influenced by recitations of violent song lyrics written by Petitioner, as well as his costume of camouflage and his stage name, which had no relevance to the crime for which he was accused. The State introduced this evidence for the sole purpose of producing fear and prejudice in the minds of the jurors, arguing that Petitioner was a dangerous person. It was clearly irresponsible and unreasonable for the trial court to allow the prosecution to make the many references it did identifying petitioner as a 'camouflaged assassin' to the jury in the days immediately following the September 11 attacks. That decision greatly

24

prejudiced the Petitioner defendant and warrants reversal of his conviction.

## ASSIGNMENT OF ERROR IV

**Petitioner's right to due process under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution was violated when the State committed prosecutorial misconduct by vouching for the credibility of a trial witness as well as testifying to the guilt of Petitioner.**

## LAW AND ARGUMENT

During closing statements, the State committed prosecutorial misconduct by impermissibly vouching for the credibility of a state witness. At one point the State noted, while discussing Nathaniel Tillison, that "I obviously view him as truthful but that's not important." Trial Transcript, Vol. VIII, pg. 59, lines 16-17. In rebuttal closing argument, the prosecutor also testified as to the guilt of Petitioner, as well as to the innocence of Thomas Williams, effectively arguing that he would not bring a case unless the person were guilty.

> [Trial Counsel] isn't the only person that is scared. I likewise share his fear. I share his fear that justice won't be done in this courtroom. And the reason justice might not be done is because of things out of my control. Mr. Williams says he has never seen a prosecutor defend a murderer. I am not- -Thomas Williams, he is not a murderer, but he doesn't have a lot favorable to be said about him. And I am not going to prosecute Thomas Williams because that may be the easy way out. I take my job very seriously. And when I make a decision to present a case to a jury, I don't take that decision lightly.

Trial Transcript, Vol. VIII, September 20, 2001, pg. 107, line 31-pg. 108, line 13.

Louisiana Code of Criminal Procedure article 774 provides that "argument shall not appeal to prejudice". Based upon this prohibition, as well as reasons of fairness, a prosecutor is barred from "expressing his personal opinion of the defendant's guilt in his argument to the jury". State v. Kaufman, 304 So.2d 300, 307 (La. 1974). In Kaufman, as in Petitioner's case, the prosecutor emphasized to the jury that he would not be prosecuting the case if he did not feel he had a case. The

25

Louisiana Supreme Court found that this argument was "unliversally [sic] held to be objectionable",

and held the prosecutor's improper and prejudicial action to be yet another reason for reversal. Id.

at 308. See also State v. Theard, 527 So.2d 393, 398 (La. App. 4 Cir. 1988), holding that it is

"impermissible for the prosecutor to abandon his argument on the evidence and express his opinion

as to the guilt of the defendant by commenting that he would not prosecute if he did not have a case";

State v. Duke, 358 So.2d 293, 294 (La. 1978).

A prosecutor is also prohibited from attesting to the credibility of a witness. "[A] prosecutor

may not give his personal opinion regarding the veracity of a witness". State v. Palmer, 775 So.2d

1231, 1236 (La. App. 1 Cir. 2000). As was brought out during Yulon James' testimony, she later

recanted to the police, leaving Nathaniel Tillison as the only conceivable eyewitness. For the State

to proactively affirm his credibility prior to any attacks on that credibility, was to improperly

persuade the jury as to Tillison's truthfulness. The State used this improper tactic to prejudice the

jury hearing Petitioner's case, thereby denying his due process rights.

### ASSIGNMENT OF ERROR V

**Petitioner was denied his right to effective assistance of counsel as provided by the Sixth and Fourteenth Amendments of the United States Constitution in that trial counsel's numerous incidents of ineffectiveness, most notably the failure to take writs, failure to present a defense, failure to object to prosecutorial misconduct, failure to ensure a complete record was made, and failure to reurge objections led to a manifest absence of counsel.**

### LAW AND ARGUMENT

Petitioner's trial counsel was ineffective to such a degree that Petitioner was denied his Sixth

Amendment right to counsel.

1.  **Trial counsel failed to take a writ of review on the denial of the Motion in Limine to bar reference to Petitioner's other guns.**

26

This Assignment of Error adopts the facts and argument already raised in Assignment No. I, relative to the improper admission of other guns evidence by the trial court. On September 7, 2001, defense counsel filed a Motion in Limine requesting that the State be barred from introducing evidence of and referencing additional guns in Petitioner's possession. Following argument, this Motion was denied by the trial court. Defense counsel did not take a writ on this issue, thereby allowing this damaging gun evidence to be introduced at trial.

As discussed above, this other guns evidence was inappropriately offered by the State only to paint Petitioner as a thug and well-armed killer before the jury. The admission was simply designed to incite fear, and trial counsel should have strenuously fought to keep this highly inflammatory and irrelevant evidence out. Trial counsel should have sought review from the First Circuit of the Trial Court's denial of the Motion in Limine, and there was no strategic reason for failing to do so.

**2.     Trial counsel failed to take writ of review on denial of Motion in Limine to keep out references to Petitioner's sta age name.**

This Assignment of Error adopts the facts and argument already raised in Assignment No. III, relative to the improper admission of Petitioner's stage name by the trial court. On September 12, 2001, defense counsel filed a Motion in Limine requesting that the State be barred from referencing Petitioner's stage name, due to the current climate of fear pervading the country due to the terrorist attacks on the United States that very week. Following argument, this Motion was denied by the trial court. Defense counsel did not take a writ on this issue, thereby allowing this damaging evidence to be introduced at trial.

Much like the above issue, this evidence was offered only to create the image of a murderer

27

in the jury's mind, in lieu of physical evidence linking Petitioner to the murder. This admission was highly prejudicial to Petitioner, and trial counsel should have sought review from the First Circuit of the Trial Court's denial of the Motion in Limine. There was no strategic reason for failing to do so, as this and other inadmissible 404(b) evidence was the crux of the State's case against Petitioner.

3.   **Trial counsel failed to take a writ of review to the Louisiana Supreme Court on the Louisiana First Circuit's reversal of trial court's granting of a mistrial in reference to witness intimidation by the State.**

This Assignment of Error adopts the facts and argument already raised in Assignment No. I, relative to the improper admission of other crimes evidence by the trial court, specifically witness intimidation. As noted above, it was determined that this issue of witness intimidation was improper fodder for questioning on voir dire. Following several remarks by the State during opening statements, the trial court granted Petitioner's Motion for a Mistrial. The State immediately took a writ to the Louisiana First Circuit, which reversed the trial court's ruling. Defense counsel did not take a writ to the Supreme Court on this issue, thereby allowing this damaging evidence to be introduced at trial. This case may be characterized by the prosecutorial attempts to circumvent their complete and total lack of physical evidence against Petitioner. Trial counsel should have sought review over these issues, and the failure to do so greatly prejudiced Petitioner.

4.   **Trial counsel failed to present a defense when they failed to subpoena Thomas Williams, who confessed to the murder for which Petitioner was charged, or Darryl Prater, who corroborated Williams' story.**

On March 1, 2000, Thomas Williams, another patron of Club Mercedes the night of the incident, went to the St. Tammany Parish Sheriff's Office accompanied by his fiancee and minister for the purpose of confessing to the murder of Barron Victor, Jr. According to Williams, Victor, Jr. charged him with a broken beer bottle. Williams, allegedly fearing for his life, fired a shot.

28

Statement of Thomas Williams, taken March 1, 2000, 1:16 p.m., pg. 2.

Williams also stated that he told Darryl Prater the night of the incident that he was the one who had fired the fatal shot, explaining that he was trembling and nervous at the time. Statement of Thomas Williams, taken March 1, 2000, 1:16 p.m., pg. 6-7. Prater corroborated Williams' statement in his second statement to police, explaining that Williams produced an illegal handgun on the ride away from the club the night of the shooting. See Second Statement of Darryl Prater, date unknown, 6:22 p.m., pg. 2. This provided trial counsel with two corroborating stories that offered an alternate theory of the crime, and one which was not brought to the attention of the jury. If trial counsel was aware of this and did not present it at trial then he failed to present a viable and known defense at trial, denying Petitioner his Sixth Amendment right to counsel.

### 5.   Trial counsel failed to present a defense when they failed to subpoena James Barney, Jamie Wilson, Lourdes Ricketts, and Darryl Prater, eyewitnesses to the shooting.

Within days of the homicide, Jamie Wilson, Lourdes Ricketts, James Barney, and Darryl Prater were all interviewed and provided formal, tape recorded statements to the police investigating this crime. The statements of these witnesses were in turn provided to Petitioner's trial counsel during discovery. The formal tape-recorded statements of Wilson, Ricketts, Barney, and Prater provide an account of the events inside Club Mercedes on the night of the homicide which differs significantly from the account of Nathaniel Tillison and the original statement of Yulon James, the only two eye-witnesses to testify at trial.[6] Most importantly, the accounts of Wilson, Ricketts, Barney, and Prater differ because they are exculpatory for Petitioner in several ways.

First and most importantly, all four witnesses indicated that Petitioner *was not* the shooter

---

[6] According to the trial transcript, Yulon James apparently recanted her testimony, effectively leaving only one witness identifying Petitioner as the shooter.

29

in this incident. See Statement of Darryl Prater, taken February 21, 2000, 9:37 p.m., pg.1,; Statement of Jamie Wilson, date unknown, 8:14 p.m., pg. 11; Statement of Lourdes Ricketts, taken February 22, 2000, 11:11 _.m., pg. 5, 15; Statement of James Barney, February 22, 2000, 7:05 p.m., pg. 8.

Moreover, three of these statements indicate that, though Petitioner may have been in possession of a firearm inside the club, he did not remove it from his waistband until *after* shots were fired. See Ricketts statement, pg. 4; Barney statement, pg. 8; Wilson statement, pg. 5. According to these witnesses, after hearing gunshots, Petitioner then removed his firearm, raised it above his head, and inquired as to who had been shooting. All witnesses also related that Petitioner then ran outside the front of the club. See Ricketts statement, pg. 4; Barney statement, pg. 9; Wilson statement, pg.5; Prater second statement, unnumbered pg.

The testimony of these witnesses was of vital importance in counteracting not only the eyewitness account of Nathaniel Tillison and the recanted account by Yulon James, but would have provided the defense and the jury with a justification for why so many people were of the belief, as improperly testified to by several police officers who arrived on the scene, that Petitioner had actually done the shooting. Because these witnesses saw Petitioner pull out his gun after the shots were fired, they were in a position to testify that he not only did not commit the crime, but would explain why he was seen with a weapon. Trial counsel did admit these statements for record purposes only, which information was never presented to the jury. Thus, the jury did not hear the inconsistencies in Tillison and James' statements, nor was the jury provided with an alternate explanation for Petitioner's actions.

30

6.     **Trial counsel failed to object to the State's vouching for an eyewitness' credibility and testifying to the guilt of Petitioner in closing statements.**

This Assignment of Error adopts the facts and argument already raised in Assignment No. IV, relative to the prosecutorial misconduct of the State when it vouched for the credibility of eyewitness Nathaniel Tillison, and when the prosecutor alleged that he would not have tried this case if the defendant were innocent.  By failing to object, defense counsel allowed the State to use its position of influence to bolster not only the credibility of Tillison, but also the guilt of Petitioner.  Moreover, trial counsel failed to object to these impermissible statements, as well as failed to move for a mistrial.  Thus, these issues were not preserved for review, and the Trial Court did not issue an admonition to the jury.

7.     **Trial counsel failed to ensure that a complete record of the proceedings was being transcribed and appellate counsel failed to obtain missing portions of the record, to reconstruct the record, or to raise the state of the record as an issue on appeal.**

The record in this case is incomplete, as some bench conferences were not transcribed.[7] More troubling, however, is the fact that with respect to the bench conferences, it simply cannot be determined what was discussed.  Although some bench conferences, no doubt, addressed ministerial matters, it is likely that others addressed issues critical to the Court and involved evidentiary matters. Without a record of these bench conferences, appellate counsel, post-conviction counsel and the courts have no way to determine whether significant errors occurred off the record.

It is well-settled that a Louisiana appellant in a criminal case has a state constitutional right to a complete record of all evidence upon which his conviction was based: "No person shall be

---

[7] For examples, <u>see</u> Trial Transcript, Vol. VI, pg. 214, lines 29-32; pg. 246, lines 23-28; pg. 248, lines 26-29.

31

subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which judgment is based...." La. Const. Art. 1 § 19. This right is necessary to implement the right to appeal, La. Const. Art. V § 20. Where a state grants a criminal appeal as of right, moreover, a criminal defendant has a due process right under the Fourteenth Amendment to the United States Constitution to appellate review on the basis of an adequate record. Griffin v. Illinois, 351 U.S. 12 (1956).

The Louisiana Code of Criminal Procedure places on the district courts an affirmative duty to record the entirety of trial proceedings in felony proceedings in order to implement the constitutional right to judicial review. See State v. Ford, 338 So. 2d. 107, 108-09 (La. 1976). La.C.Cr.P. art. 843 provides:

> In felony cases ... the clerk or court stenographer shall record all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel.

The district court's failure to comply with the dictates of article 843 thus violated Petitioner's right to judicial review secured by the Louisiana Constitution, La. Const. art. 1, §§ 19 and 20, and the VIII and XIV Amendments to the United States Constitution.

Defense counsel, as well, had a duty to ensure that an adequate record was made of the proceedings in the trial court. The right to a complete record of a criminal trial sits solely with the defendant and cannot be waived by defense counsel or anyone else. See State v. Gibbens, 562 So. 2d 457 (La.App. 3 Cir. 1990) (setting aside conviction and sentence and remanding for new trial where the record reflected that defense counsel had waived right of recordation, but did not reflect that the trial court affirmatively determined that the defendant himself had intelligently waived his

32

constitutional right of judicial review).

It is clear that trial counsel was aware that bench conferences were not being recorded by the court stenographer.  There can be no strategic reason for trial counsel's failure to make sure that every bench conference addressing substantive trial issues was preserved for appellate review.  Counsel's failure violated Petitioner's right to effective assistance of counsel under La. Const. art. 1, § 13 and U.S. Const. amends. V, VI, VIII and XIV.

In Ford, *supra*, the Supreme Court noted with approval the United States Fifth Circuit Court of Appeal's "especial[] vigilan[ce] in requiring a reversal, even if no particular prejudice has been alleged, when defendant's counsel on appeal is a different person from trial counsel and a portion of the transcript is unavailable." 338 So. 2d. at 109.  See also Hardy v. United States, 375 U.S. 277, 282 (observing that where appellate counsel was not counsel at trial, the duty to serve as an advocate made the entire transcript of the trial necessary).  Appellate counsel did nothing to reconstruct the unrecorded portions of Petitioner's trial.  Counsel's failure violated Petitioner's right to effective assistance of appellate counsel under Article 1, section 13 of the Louisiana Constitution of 1974 and Amendments VI and XIV of the United States Constitution.

## 8.	Trial counsel failed to reurge sustained objections to leading questions, resulting in the elicitation of damaging information.

During the course of the trial, defense counsel raised several objections to the State's questioning.  Although the Trial Court sustained some of these objections, the district attorney proceeded to again ask the exact same question of the witness.  In many instances, defense counsel had previously received a favorable ruling from the Court, but failed to lodge another objection again when the state blatantly failed to heed the Court's ruling.  A review of the trial transcript in

33

Petitioner's matter will reveal several other similar instances of trial counsel's ineffective behavior.

MR. DEARING
Q.      At any point did you see something of significance coming form the defendant's hands?
MR WILLIAMS:
I am going to object again as to leading, Judge.
THE COURT:
I am going to sustain.  Don't lead the witness.
EXAMINATION BY MR. DEARING:
Q.      During the time that you saw the defendant, could you tell us anything that you would recognize as being perhaps significant?
A.      Yeah, I seen a gun on him.
Q.      And did you see anything come out of that gun?
A.      Sparks.

Trial Transcript, Vol. VII, September 19, 2001, pg. 116, lines 15-29.  Trial counsel's failure to strenuously object to this clearly improper behavior by the state prejudiced Petitioner in two ways. First, counsel's failure to re-urge objections allowed the jury to hear improper and inadmissible testimony.  Second, counsel's failure to re-urge the objections also served as a failure to preserve the record of defense's objections for appellate review.  For this failure, on the part of trial counsel, Petitioner respectfully requests relief.

Petitioner was clearly aggrieved by the claims listed above.  All incidents describe blatant examples of ineffective assistance of counsel of both trial and appellate counsel.  "The right to counsel is the right to the effective assistance of counsel."  McMann v. Richardson, 397 U.S. 759, 771, n. 14 (1970).  It is asserted that Petitioner can prevail on his claims of ineffective assistance of counsel, and that Petitioner can show both that counsel's performance was deficient and that counsel's errors prejudiced the defense.  This is the familiar two-pronged test of Strickland v. Washington, 466 U.S. 668 (1984).  "[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances" where "reasonable" is viewed in light of

34

prevailing professional norms. Id. at 688. Defending trial counsel's challenged performance on the grounds of "strategy" depends on the fulfillment of counsel's duty to conform strategy with fact: that is, the duty to investigate. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-691.

Once unprofessional performance has been demonstrated, the court must assess prejudice. In order to prove prejudice under the Strickland standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; United States v. Chavez, 193 F.3d 375, 377 (5 Cir. 1999) ("a reasonable probability exists that counsel's deficient performance affected the outcome and denied [petitioner] a fair trial."). In Strickland, the Supreme Court defined a reasonable probability as "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 669. In making a determination as to whether prejudice occurred, courts must review the record to determine the "relative role that the alleged trial errors played in the total context of [the] trial." Crockett v. McCotter, 796 F.2d 787, 793 (5 Cir. 1986). Indeed, the court must evaluate any claims of ineffectiveness in a specific context peculiar to the case and the counsel:

> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.

Strickland, 466 U.S. at 690. Petitioner has therefore submitted specific instances of trial counsel's prejudicial and inexcusable conduct.

Petitioner asserts that his trial counsel was ineffective for the foregoing reasons, and such

ineffectiveness highly prejudiced Petitioner. But-for counsel's failure to take writs, failure to present a defense, failure to object to prosecutorial misconduct, failure to ensure a complete record was made, and failure to reurge objections, the result of the proceedings would have been different. When added together and assessed under the cumulative prejudice test, there is no doubt that Petitioner's trial counsel was ineffective. Petitioner thus respectfully requests relief from this Honorable Court, and if granted an evidentiary hearing, will gladly present evidence and testimony in support of his claims.

## ASSIGNMENT OF ERROR VI

**Petitioner's right to due process and a fair trial guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution was violated when the Trial Court permitted the State to backstrike a juror that had already been sworn.**

## LAW AND ARGUMENT

In Petitioner's case, the jury panel was sworn in two parts–the first seven jurors were selected, sworn, and impaneled on September 10, 2001. Trial Transcript, Vol. I, pg. 162, lines 22-26. They were given instructions by the Trial Court regarding their role as sworn jurors. However, on September 12, 2001, the Trial Court allowed the State to back strike Juror No. 185, Michelle G. Pecoraro, who had already been sworn and impaneled as a juror. Trial Transcript, Vol. I., pgs. 113-115. Defense counsel objected and made an oral motion for mistrial, which was denied by the Trial Court. Id. The Trial Court clearly erred in its analysis of the law and allowance of a back strike of a previously sworn juror.

"Back striking is the practice of allowing both sides, after selecting jurors from the last panel, to go back and expend any remaining peremptory challenges to exclude jurors from previous panels, before accepting and swearing the entire jury." Riddle v. Bickford, 785 So.2d 795, 797-798 (La.

36

2001). However, La. C.Cr.P. art. 795(B)(1) provides "[p]eremptory challenges shall be exercised *prior to the swearing of the jury panel*". Emphasis added. Although the trial court argued that under La. C.Cr.P. art. 790 the jury is not sworn until the entire jury has been selected, alternates included, these articles clearly conflict. Article 795 only makes reference to the swearing of the jury panel, which was done on September 10, 2001, prior to the back strike.

In State v. Jackson, the Louisiana Second Circuit found that there was no error in allowing a back strike before the jury panel had been sworn. 595 So.2d 789, 793 (La.App. 2 Cir.1992). Unlike Jackson, Juror #185 had already been sworn and impaneled by the trial court. Trial counsel objected to the back strike, and moved for a mistrial, both of which were denied by the Trial Court. The Trial Court failed to conform to procedure and Petitioner's rights were thus violated, especially in lieu of the events of September 11th, which occurred after the sequestering of the jurors.

## CONCLUSION

For the foregoing reasons, Petitioner McKinely Phipps respectfully requests that this Honorable Court grant consideration to his claims. He was wrongfully convicted of one count of Manslaughter (La. R.S. 14:31) and sentenced to thirty years at hard labor without benefit of probation, parole, or suspension of sentence. 28 U.S.C.A. § 2254 provides in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Petitioner herein submits claims to this Honorable Court based on egregious violations of his constitutional rights, and thus requests the granting of this petition under 28 U.S.C. §2254(d)(1) and (2). Relief is specifically requested to set aside his conviction and sentence and order him released from custody or, alternatively, order an evidentiary hearing as provided by La. C.Cr.P. art. 930 as to clarify facts which cannot properly be resolved on pleadings alone. Petitioner humbly beseeches this Honorable Court for long-overdue consideration of the constitutional violations raised herein.

WHEREFORE, Petitioner prays that this Court grant Petitioner relief to which he may be entitled.

<div style="margin-left:40%;">

Respectfully submitted,
**LAURIE A. WHITE AND ASSOCIATES**


Laurie A. White, Bar No. 17898
Autumn Town, Bar No. 28787
Bradley E. Black, Bar No. 29763
633 Carondelet Street
New Orleans, Louisiana 70130
Telephone: (504) 525-1020
Fax: (504) 525-1025

Attorneys for Petitioner,
McKinley Phipps

</div>

38

## CERTIFICATE OF SERVICE

I, AUTUMN TOWN, do hereby verify that the allegations contained in the foregoing *Petition for Writ of Habeas Corpus* are true and correct to the best of my knowledge and further certify that a copy of this application has been served upon the appellate court, the Louisiana First Circuit Court of Appeal, Post Office Box 4408, Baton Rouge, Louisiana, 70821; the respondent judge, the Honorable William Burris, Division "E", 22nd Judicial District Court, 701 North Columbia Street, Covington, Louisiana, 70434; and opposing counsel, Walter P. Reed, St. Tammany Parish District Attorney, 701 N. Columbia Street, Covington, Louisiana, 70433, this 16th day of February, 2006.

AUTUMN TOWN

-39-

# IVIL COVER SHEET

06-0570

herein neither replace nor supplement the filing and service of pleadings or other papers as required
approved by the Judicial Conference of the United States in September 1974, is required for the use
et sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**DEFENDANTS**

Tim Wilkinson, Warden

SECT.T MAG6

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT

(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

ATTORNEYS (IF KNOWN)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)                                                  AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury — Med. Malpractice
- ☐ 365 Personal Injury — Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

### PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence
**HABEAS CORPUS:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

### FORFEITURE/PENALTY
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS — Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)
- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Petition Under 28 U.S.C. §2254, Writ for Habeas Corpus

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $   CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ YES   ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____